# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES BAILEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| —against— | : |
| | : |
| TEKTRONIX, INC., an Oregon corporation, | : |
| | : |
| Defendant. | : |

## *Complaint*

Plaintiff, James Bailey, brings this action against defendant, Tektronix, Inc. (collectively, the "Parties"), and alleges:

## *Introduction*

1. This is a breach of contract action related to Tektronix Inc.'s failure to honor the terms of a Retention Holdback Agreement entered into between the Parties in connection with an Agreement and Plan of Merger. Tektronix has also violated the provisions of Delaware's Wage Payment and Collection Act. As a result, Jamie Bailey has been damaged in an amount that exceeds one million dollars.

2. This is an action in excess of one million dollars, exclusive of interest, costs, and attorneys' fees.

3. Plaintiff, James "Jamie" Bailey ("Mr. Bailey"), is an individual residing in the State of Tennessee.

4. Defendant, Tektronix, Inc. ("Tektronix"), is an Oregon corporation registered to do business in Delaware and its agent for service of process is The Corporation Trust Company, located at 1209 Orange Street in Wilmington, Delaware.

### Statement of Facts

5. Mr. Bailey was the founder and chief executive officer of a unique technology company called Initial State Technologies, Inc. ("IST"), founded in 2012. IST designed and developed certain software products, including valuable intellectual property which made it easy to send data from web-connected devices, sensors, and applications through Application Programmable Interfaces ("APIs") to a reliable, secure, scalable cloud where that data could be accessed through APIs.

6. In 2017, Tektronix approached Mr. Bailey regarding Tektronix's acquisition of IST. Specifically, Tektronix was interested in IST's intellectual property for use in the oscilloscopes Tektronix manufactured. When implemented in Tektronix's oscilloscopes, IST's intellectual property would allow those devices to send data and information to and from a reliable, secure, scalable cloud infrastructure. Notably, Tektronix was not interested in IST's existing software product and users.

7. The parties engaged in a back and forth negotiation before finally reaching mutually agreeable terms on a deal, which contemplated the merging of

IST into Tektronix. Additionally, Mr. Bailey would join Tektronix as an employee to oversee the implementation of IST's intellectual property into Tektronix's product line.

8. Under the terms of the deal, Tektronix issued 1,047,258 convertible securities to certain investors in IST pursuant to Convertible Securities Purchase Agreements. Thereafter, on January 5, 2018, the Parties executed an Agreement and Plan of Merger, pursuant to which IST was effectively merged into Tektronix by way of a wholly owned subsidiary of Tektronix.

9. On the same day, Mr. Bailey and Tektronix executed a Retention Holdback Agreement ("RHA"). Per the terms of the RHA, Tektronix would withhold $800,000 otherwise payable to Mr. Bailey until certain conditions were met ("Retention Holdback Amount"). Specifically, the RHA sets forth those conditions as follows:

> 2. **Release of Retention Holdback Amount**.
>
> (a) **Retention Release Date**. No later than January 15, 2021, Key Employee will be paid an amount in cash, which amount will not exceed the Retention Holdback Amount, equal to 20% of each dollar of Revenue, but only if Key Employee (i) is continuously employed by a Parent Entity from the Closing Date through December 31, 2020 or (ii) is not employed by a Parent Entity on December 31, 2020 as a result of the termination of Key Employee's employment by a Parent Entity without Cause or by Key Employee for Good Reason or by reason of Key Employee's death or permanent disability. The Retention Holdback Amount will not accrue interest.

Further, per the terms of the RHA, "Revenue" is defined as follows:

> (v) "**Revenue**" means each dollar of gross revenue in excess of $6,000,000 (but, for the avoidance of doubt, less than or equal to $10,000,000) generated during 2020 by any member of the Parent Group from or with respect to any software that contains any of the intellectual property owned by the Company as of the Closing Date.

3

10. Therefore, pursuant to the RHA, for every dollar in gross revenue Tektronix (or its subsidiaries) generated in 2020 "from or with respect to any software" which contained ***any of*** IST's intellectual property in excess of $6,000,000, Mr. Bailey was to receive twenty percent, not to exceed $800,000, so long as Mr. Bailey remained employed at Tektronix through December 31, 2020.

11. The employment condition is satisfied as Mr. Bailey remained employed at Tektronix until May 21, 2021.

12. The revenue condition is also satisfied as Tektronix has generated well in excess of $10,000,000 in gross revenue "from ***or with respect to*** any software" that contains IST's intellectual property.

13. IST's intellectual property was implemented in a module Tektronix developed known as the Marshall Module. The Marshall Module provides two-way communication capabilities between a device (for example, a Tektronix oscilloscope) and a cloud infrastructure. This allows data to be securely sent from the device to the cloud as well as receive updated software from the cloud to the device.

14. The Marshall Module heavily leveraged existing IST infrastructure and intellectual property, including, but not limited to, authentication, continuous deployment, and API calls. The Marshall Module connects to IST's pre-existing APIs and infrastructure and therefore leverages IST's intellectual property and did

so during the entirety of its use in 2020.  The entire purpose of the Marshall Module is to connect Tektronix's oscilloscopes to the cloud, which is directly accomplished using IST's intellectual property.

15.    Additionally, Tektronix utilizes software known as the Riddick Software, which makes the oscilloscopes operate.  Without the Riddick Software, the oscilloscopes do not operate.  The Marshall Module, which includes extensive IST intellectual property, is included in the Riddick Software.

16.    Finally, IST's intellectual property is incorporated in the software operating the Keithley DAQ 6500/6510 Data Acquisition and Logging, Multimeter System.  Indeed, the IST "wave logo" is present in the user interface for that product as shown below:



17. Upon information and belief, the oscilloscopes and devices in which IST's intellectual property was incorporated (whether such intellectual property is essential or necessary to operate such oscilloscopes) earned far more than $10,000,000 in gross revenue in 2020. As such, Mr. Bailey is entitled to the entirety of the $800,000 Retention Holdback Amount.

### *Count One – Breach of Contract*

18. Mr. Bailey realleges paragraphs 1-17 above as if set forth fully herein.

19. Mr. Bailey and Tektronix entered into the Retention Holdback Agreement on January 5, 2018.

20. Pursuant to the terms of the RHA, for every dollar in gross revenue Tektronix (or its subsidiaries) generated in 2020 "from or with respect to any software" which contained **any of** IST's intellectual property in excess of $6,000,000, Mr. Bailey was to receive twenty percent, not to exceed $800,000, so long as Mr. Bailey remained employed at Tektronix through December 31, 2020.

21. Mr. Bailey remained employed with Tektronix until May 21, 2021.

22. Tektronix generated more than $10,000,000.00 from or with respect to products containing software which contained IST's intellectual property.

23. Mr. Bailey has satisfied the terms of the RHA, yet Tektronix refuses to pay Mr. Bailey any of the Retention Holdback Amount.

24. Mr. Bailey is entitled to the entirety of the Retention Holdback Amount.

### *Count Two – Violation of the Duty of Good Faith and Fair Dealing*

25. Bailey realleges paragraphs 1-24 above as if set forth fully herein.

26. Every contract governed by Delaware law includes a duty of good faith and fair dealing.

27. The RHA is governed by Delaware law and the implied covenant.

28. By refusing to pay Mr. Bailey the Retention Holdback Amount upon the satisfaction of the terms set forth in the RHA, Tektronix has violated the duty of good faith and fair dealing.

### *Count Three – Violation Of Delaware's Wage Payment And Collection Act*

29. Bailey realleges paragraphs 1-28 above as if set forth fully herein.

30. Delaware's Wage Payment and Collection Act defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is fixed or determined on a time, task, piece, commission or other basis of calculation." 19 *Del. C.* § 1101(a)(5).

31. No employer is permitted to withhold or divert any portion of an employee's wages unless under certain, defined circumstances not present here. 19 *Del. C.* § 1107.

32. Employees whose wages have been impermissibly withheld are entitled to bring a civil action to recover both the unpaid wages and liquidated damages. Any judgment entered for a plaintiff shall include an award for the costs of the action, the

necessary costs of prosecution and reasonable attorney's fees, all to be paid by the defendant. 19 *Del. C.* § 1113.

33. The Retention Holdback Amount was to be paid to Mr. Bailey for services rendered by Mr. Bailey and the attainment of certain employment and business goals. Essentially, it is a commission. As such, the Retention Holdback Amount meets the definition of "wages" under the Delaware Wage Payment and Collection Act.

34. The certain employment and business goals set forth in the RHA have been met, and as such, Tektronix was required to pay Mr. Bailey the Retention Holdback Amount.

35. Tektronix has unlawfully withheld the Retention Holdback Amount in direct violation of the Delaware Wage Payment and Collection Act.

36. Mr. Bailey is entitled to his unpaid wages, liquidated damages, costs and attorneys' fees associated with this civil action.

### *Count Four – Violation of Oregon Revised Statute Section 652.150*

37. Bailey realleges paragraphs 1-36 above as if set forth fully herein.

38. Oregon Revised Statute § 652.150(2)(a) states that when an employer willfully fails to pay any wages or compensation to any employee whose employment ceases, and the employee has submitted a written notice of nonpayment, the penalty for the nonpayment may not exceed one hundred percent

of the employee's unpaid wages or compensation unless the employer fails to pay the full amount of the employee's unpaid wages or compensation within twelve days after receiving the notice.

39. Oregon Revised Statute § 652.150(2)(c) states that the written notice of nonpayment must include the estimated amount of wages or compensation alleged to be owed or an allegation of facts sufficient to estimate the amount owed.

40. Oregon Revised Statute § 652.200(2) states that in any action for collections of wages, upon entry of judgment for the plaintiff, the court shall include in the judgment a reasonable sum for attorneys' fees.

41. Under Oregon law, the Retention Holdback Amount is considered wages or compensation.

42. Tektronix has unlawfully withheld the Retention Holdback Amount.

43. Mr. Bailey, through counsel, has submitted notice to Tektronix that it has unlawfully withheld the Retention Holdback Amount on multiple occasions by way of written correspondence. Tektronix has denied that they have unlawfully withheld the Retention Holdback Agreement.

44. More than twelve days have transpired since Tektronix has received such written notice of nonpayment.

45. Mr. Bailey is entitled to his unpaid wages or compensation, a penalty in an amount to be determined by the Court of at least one hundred percent of the

unpaid wages or compensation along with costs and attorneys' fees associated with this civil action.

WHEREFORE, James Bailey respectfully requests this Honorable Court to enter judgment in his favor and award him the following

    A.    compensatory damages of $800,000;

    B.    liquidated damages and penalties of $800,000;

    C.    costs of suit;

    D.    attorneys' fees; and

    E.    any further relief this Court deems reasonable and necessary.

SMITH, KATZENSTEIN & JENKINS, LLP

*Of counsel:*
Christopher H. Lee
Benjamin A. Webster
Morgan & Morgan, PA
Business Trial Group
76 South Laura Street, Suite 1100
(904) 944-8384

  /s/  *Robert K. Beste*
Robert K. Beste (3931)
Jason Z. Miller (6310)
1000 North West Street, Suite 1501
Wilmington, Delaware 19081
(302) 652-8400

September 3, 2021

*Counsel for plaintiff*